# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| KAREN HARVEY on behalf of herself and all others similarly situated, | Case No.: |
| | 6:11-cv-00582-MSS-GJK |
| Plaintiff, | |
| v. | CLASS ACTION |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | |
| Defendant. | |

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Pursuant to this Court's Order filed on July 18, 2011, Plaintiff Karen Harvey ("Plaintiff" or "Harvey"), individually and on behalf of all others similarly situated, hereby replies to Response Memorandum in Opposition to Plaintiff Karen Harvey's Motion for Class Certification (hereinafter "Defendant's Response"). Plaintiff hereby requests this Court certify this putative Class Action against Portfolio Recovery Associates, LLC (hereinafter "Defendant" or "PRA LLC").

### I. OVERVIEW

PRA LLC argues in response to Harvey's Motion for Class Certification that (1) she is not a member of her own class, (2) individual questions of fact, based on the purported underlying debt contract provisions, will dominate the analysis, and (3) that the class is not ascertainable.

In this Reply Brief it is shown that (1) Harvey brings further <u>evidence</u> of her class membership, (2) the purported underlying debt provisions are unenforceable because the Statute

of Limitations has run and, therefore, provide no defense and create no individualized questions, and (3) the putative Class is ascertainable.

## II. FACTS[1]

The statement of facts offered by PRA LLC is remarkable, first for what it does not say. PRA LLC's statement of facts does not deny that it made calls to the Plaintiff and to the putative class. PRA LLC's statement of facts does not deny that it Skip Traced in order to derive the cell telephone number of Plaintiff and the putative class. Defendant's Response does not argue (because it cannot) that Cellular Telephone numbers, derived through Defendant's Skip Tracing procedures and used to call Plaintiff and the putative Class, meet the requirements for Prior Express Consent pursuant to Federal Communication Commission ("FCC") Rules and Regulations. [*FCC 2008 Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10)].

Instead, PRA LLC attempts to rely upon Boilerplate Language in purported contracts "available to Florida residents." (Doc. 40, p. 2.) Paragraph 10 of the *FCC 2008 Declaratory Ruling* unambiguously states that there is only ***one method*** to obtain Prior Express Consent. "We emphasize that prior express consent is deemed to be granted ***only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.***" *Id.* [Emphasis added].

Just as with Cellular Numbers derived through Skip Tracing, Defendant's Boilerplate Language argument fails because it clearly does not conform with the express FCC requirements for Prior Express Consent i.e. that the actual wireless number be provided by the consumer

---

[1] The Plaintiff is in the unusual position of arguing and briefing her Motion for Class Certification absent any meaningful discovery from the Defendant. The Motion for Class Certification was filed, compliant with Local Rule 4.04(b) within 90 days of the Original Complaint. Even though written Discovery Requests are currently outstanding to Defendant, Responses are not due prior to the filing of this Reply Brief. Nevertheless, it is readily apparent that this class should be certified. Plaintiff offers to supplement this filing upon receipt of the pending discovery by mid-August, 2011.

during the transaction that resulted in the debt owed. Further, as discussed below, Plaintiff has refined the Class Definition so that the Statute of Limitations will obtain to legally Time Bar the Parties in this case from enforcing the terms and conditions of any purported underlying contracts.

Moreover, denial of class certification cannot be based on speculation, or "likely," or "raising questions". *See e.g. Lampkin* v. *GGH, Inc.*, 146 P.3d 847; 2006 Okla Civ. App. LEXIS 108 (Okla Civ. App. 2006); *also Whiting Corporation* v. *Sungard Corbell, Inc.*, No. 03-CH-211135 (Ill. Cir. November 9, 2005) at Page 4.

The balance of PRA LLC's statement of facts is essentially motion for summary judgment fodder and is not appropriate for class certification decision-making. Nevertheless, and very concisely, Plaintiff states the following:

1. The TCPA is indisputably directed to debt collectors, not just telemarketers. *FCC Declaratory Ruling*, 23 FCCR 559 at ¶ 10.

2. The declaration of Joshua Cherkasly (Cherkasly Decl., Doc 40-4) is simply not consistent with FCC authority. As Harvey explained in her opening brief, the FCC has issued rulings expanding the definition of "automatic telephone dialing system" to include predictive dialers, which the FCC defined as "having the capacity to dial numbers without human intervention and as equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls... ." (Doc. 34-1, p. 6.) Mr. Cherkasly makes no effort to reconcile his opinions with the ruling of the FCC. Indeed, Mr. Cherkasly writes as if this is the first time this issue has been

3

addressed.[2] Further, in one of the seminal TCPA cellular telephone opinions, the Ninth Circuit affirmed that the material question is not the equipment's current configuration, but its *capacity*:

> "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator." ***Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.*" Laci Satterfield et al. v. Simon and Shuster, Inc. et al.*, 569 F.3d 946, 951 (2009). [Emphasis added].

Hence, PRA LLC must argue that its Avaya Predictive Dialers cannot store and dial lists of *random or sequential* numbers. But PRA concedes that its Avaya Predictive Dialers do have the capacity to do so, and even provides a step-by-step guide for reconfiguring the Avaya Predictive Dialers to dial random or sequential numbers. (Cherkasly Decl., Doc 40-4 at ¶ 10.). Mr. Cherkasly's conclusion has been rejected by the FCC and the courts such as in *Satterfield*. Enough forecasting on the summary judgment issues; now, we address the class certification arguments.

## III. ARGUMENT

Plaintiff has satisfied her burden of proof that the class should be certified.

### A.  The Class Is Numerous.

The requirement of numerosity does not mean that the Plaintiff must reduce the class to a specific number. Indeed, where sufficient facts are in the record from which numerosity can be inferred, the Court will find the requirements to be satisfied. *See Kornick v. Talley*, 86 F.R.D. 715 (N.D. Ga. 1980). Plaintiff Harvey has offered the SEC filings of PRA Inc. (parent of PRA LLC) that demonstrate 1,913,000 defaulted consumer receivables located in the State of Florida have been purchased by PRA LLC. Further, PRA has stipulated in

---

[2] Mr. Cherlasky is not alone. In the balance of its submission, PRA LLC *never once* cites to the controlling authority of the FCC 2003 Order or the FCC 2008 Declaratory Ruling, and certainly never tries to reconcile them with its position here.

4

an official filing with the FCC that it routinely calls Cellular Telephones (Doc. 23-2, Page 5, ¶ 2) and that "*96 percent* of PRA's total dialed calls are autodialed" (Doc 23-2, Page 11, ¶ 2) [Emphasis added]. Finally, in the same official filing, PRA admits that it utilizes pre-recorded messages (Doc. 23-2, Page 6, FN 14) in its calls to Cellular Telephones. This Court can easily find numerosity.

Moreover, Plaintiff Harvey is a member of the class she seeks to represent. PRA LLC argues that Harvey offers no evidence that she was called through automatic telephone dialing system or recorded voice. However, Paragraph 19 of the First Amended Complaint clearly sets forth that Ms. Harvey received calls to her cell phone and there was a recorded message from Defendant. With this filing, Ms. Harvey has also attached her Affidavit repeating these averments. Class membership is established.

Finally, PRA LLC has not denied that it called Ms. Harvey using a predictive dialer. Certainly, if the Defendant had such evidence, it would be before this Court. The Plaintiff intends to show on further discovery that all outgoing calls placed by PRA LLC, save those which are returned calls, are placed through its predictive dialer.

**B.      Commonality And Predominance Are Satisfied.**

The Defendant's conduct toward the class is standardized. PRA LLC secured each class member's cell telephone number through Skip Tracing techniques. PRA LLC then used those numbers to contact the Plaintiff class through auto-dialers. As discussed above, cellular telephone numbers obtained through Skip Tracing techniques do not conform to the FCC's prior express consent requirements and therefore are violative of the TCPA. The Class Definition in this case includes only Class Members whose cellular telephone numbers were obtained by Defendant through its Skip Tracing process. This "common nucleus of operative fact" forms the

5

core of the class action in this case. Commonality is prevalent in the instant case because the putative class have suffered the same injury. Most recently, the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes, et al.* No. 10-277, 2011 U.S. LEXIS 4567 (June 20, 2011) stated: "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." p. 9. In the instant case, all the members suffered the identical damages, that is $1,500 per call received. Further, where a TCPA defendant obtains cellular telephone numbers from a uniform source, and calls them "en masse," the "question of consent may rightly be understood as a common question." *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp.2d 802, 807 (N.D. Ill. 2008) (Bucklo, J.). The Commonality and Predominance criteria is satisfied.

As is often the case, the Defendant attempts to change the inquiry to examine the conduct of the individual members of the Plaintiff class. In this case, the Defendant focuses upon the underlying debt contracts. Focusing on those contracts serves only to obfuscate and misdirect.

First, the burden of demonstrating prior express permission or consent rests squarely on PRA LLC. Second, Defendant's suggestion that "consent can take many forms" is simply wrong. Prior express permission or consent to receive calls on one's cell phone through an automated dialing system or the use of a pre-recorded voice <u>can only be given at the time of creation of the debt wherein the Debtor expressly provides their cellular telephone number to the Creditor.</u> *FCC Declaratory Ruling*, 3 FCCR 559, para. 10. Again in this case, PRA LLC cannot deny that it did not base its telephone calls on prior express permission or consent, rather it Skip Traced to find the numbers. Therefore, the Defendant will not have to look at all of its records, indeed it will not have to look at any of its records except those establishing its Skip Tracing and calling. There

will be no mini-trials.[3] Plaintiff's claims arise statutorily based upon TCPA violations.

However, to the extent the Court feels that purported contractual terms and conditions may be an issue in this case, Plaintiff hereby formally amends the Class Definition by adding the following language: **"Wherein the purported debt became defaulted at least six (6) years prior to the filing of Plaintiff's Motion for Class Certification."** The effect of adding this additional language to the Class Definition will mean that the Statute of Limitations has run on all Class Members' purported underlying debt because there are no applicable Statute of Limitations greater than six (6) years (Doc. 40-3). Therefore, Defendant cannot legally enforce any contractual terms and conditions of the purported underlying debt contracts and such contracts effectively become a nullity as applied to the case *sub judice*.

In fact, Defendant's even threatening to bring legal action to enforce the purported contractual terms and conditions would be a direct violation of the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692e; *see also Larsen v. JBC Legal Grp.*, P.C., 533 F. Supp. 2d 290, 302-03 (E.D.N.Y. 2008) (threatening legal action on time-barred debt violated FDCPA), The original date of default should be readily available in Defendant's business record database and can be screened accordingly. Therefore, any purported contractual terms and conditions are not an element of consideration in this case, including as to Class Certification.

### C.  The Class Is Ascertainable.

PRA LLC suggests that the class is not ascertainable because the class definition requires this Court to determine the ultimate issue of liability to define the Class. Defendant is incorrect. In this case, the Class is defined as those who were called by the Defendant using auto-dialers or pre-recorded messages to the Class Members' Cellular Telephone numbers where the numbers

---

[3] Defendant's reliance on *Sacred Heart Health System, Inc. v. Humana Military Health Care Services, Inc.*, 601 F.3d 1169 (11th Cir. 2010) is simply misplaced. The *Sacred Heart* decision is not a TCPA case wherein the burden of proving consent or permission is an affirmative defense squarely leveled on the shoulders of the defendant.

7

were secured by Skip Tracing and the purported underlying debt defaulted at least six (6) years prior the filing of Plaintiff's First Amended Complaint. That process doesn't by definition decide the merits of this case. For the reasons discussed above, this Court need not decide the boilerplate contract language offered up by PRA LLC. Moreover, this Court needs to focus on the conduct of the Defendant – Skip Tracing to find cell phone numbers and utilizing those numbers to contact Plaintiff and the putative Class – rather than Defendant securing consent as defined in the FCC 2008 Declaratory Ruling at ¶ 10.

In another case *Bartlett v. Portfolio Recovery Associates, LLC*; Northern District of Georgia; Docket No. 1:11-cv-0624-JOF (hereinafter "*Bartlett*"), which Defendant stipulates is a related pending case (*see* Doc. 21), PRA LLC responded to the following Interrogatory No. 1(*Bartlett*, Doc. 56-1):

> Identify all persons in the State of Georgia to whom, at any time on or after October 28, 2010, PRA placed a non-emergency telephone call to a cellular telephone through the use of an ATDS, predictive dialer and/or an artificial or prerecorded voice.

In response, PRA submitted:

> ANSWER: ... PRA refers Plaintiff to data produced in response to Request for Production No. 1 from which the following can be ascertained: *(1) the account number, (2) the telephone number called, (3) the debtor's name in the following format: last name, first name, (4) whether PRA's records indicate that a telephone number is a cellular telephone number, and (5) whether PRA has a record of the number being skip-traced.* [Emphasis added].

A true and correct copy of the foregoing cited Interrogatory is annexed hereto as Exhibit "B" and incorporated herein by reference.

Based upon the foregoing, it is indisputable that the Class is ascertainable.

### D. Disproportionate Liability Is Not Applicable And The Superiority Requirement Is Satisfied.

PRA LLC suggests that this case is not suitable for class certification because it would

8

subject PRA LLC to disproportionate liability given the nature of the violation. (Doc. 40, p. 17). The great majority of TCPA class action decisions have flatly rejected PRA LLC's position.

There is no Eleventh Circuit decision addressing the issue of disproportionate damages in the TCPA context. Moreover, there is no federal district court decision within the Eleventh Circuit addressing that issue. Nevertheless, the great majority of the TCPA decisions – all save one – have flatly rejected the disproportionality argument.[4] In this case, PRA LLC is constrained to cite this Court to Eleventh Circuit decisions which discuss the disproportionality argument in every context but the TCPA. *See e.g., Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (a Truth in Lending Act case); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) (discussing a Florida Credit Life Insurance Statute and Truth in Lending Act); *Hilis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006) (a Credit Repair Organizations Act case); *Helms v. Consumer Info.com, Inc.*, 236 F.R.D. 561 N.D. Ala. 2005 (Credit Repair Organizations Act).

PRA LLC's reliance on each of these cases is misplaced for several reasons. First, each of the cases relied upon by PRA LLC involves a statute which provides attorneys' fees for the prevailing party. However, attorneys' fees *are not* available for proven violations of the TCPA. *Kavu*, 2007 U.S. Dist. LEXIS 5207, *22. That distinction is significant. Absent the statutory provision for attorney's fees, most plaintiffs in TCPA cases can likely secure recovery only in the class context. The small amount of damages available to an individual with a single TCPA claim of $500 is not enough to attract counsel to represent the consumer.

Second, PRA LLC overstates the weight to be accorded the decisions here relied upon.

---

[4] That one decision is *Levine v. 9 Net Avenue, Inc.*, 174 N.J. 361, 807 A.2d 193 (S.Ct. N.J. 2002). The lonely *Levine* decision was based on faulty premises and has persuaded no other TCPA courts.

For example, in the *London* decision, the discussion of the *Ratner* line of cases, is at best, <u>dicta</u>. The discussion is found only within footnote 5, at the end of the decision, after the Court had decided that class certification was inappropriate because the Rule 23(a)(4) criteria of adequacy could not be demonstrated.

The superiority criteria is met. Comparing, as the Court must, the benefits of trying only one time the issues of liability and damages, as well as the defenses raised by PRA LLC, rather than thousands of times in the courts of Florida, cannot be overstated. PRA LLC's superiority argument is not motivated by concerns of efficiency (to which Rule 23 is directed) but to issues of fairness of damages - a determination more appropriately made at a later date, after damages have been assessed.

## CONCLUSION

For the reasons set forth above, and in Plaintiff's Original Brief, the Class should be certified.

This 25th of July, 2011.

Respectfully submitted,

/s/ *Henry A. Turner*
Henry A. Turner, Esquire
Georgia Bar No. 719310
(*Pro Hac Vice*)
TURNER LAW OFFICES, LLC
Co-Counsels for Plaintiff
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 261-7787
hturner@tloffices.com

/s/ *Maurice Arcadier*
Maurice Arcadier, Esquire
Florida Bar No. 131180
ARCADIER & ASSOCIATES, P.A.
Co-Counsel for Plaintiff
2815 W. New Haven Blvd., #304
W. Melbourne, Florida 32904
Telephone: (321) 953-5998
Fax: (321) 953-6075
Email: office@wamalaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing was filed with the Clerk of Court by using the CM/ECF system, on this 25th day of July, 2011.

/s/ *Henry A. Turner*
Henry A. Turner, Esquire
Georgia Bar No. 719310
(*Pro Hac Vice*)
TURNER LAW OFFICES, LLC
Co-Counsels for Plaintiff
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Telephone: (404) 261-7787
hturner@tloffices.com

/s/ *Maurice Arcadier*
Maurice Arcadier, Esquire
Florida Bar No. 131180
ARCADIER & ASSOCIATES, P.A.
Co-Counsel for Plaintiff
2815 W. New Haven Blvd., #304
W. Melbourne, Florida 32904
Telephone: (321) 953-5998
Fax: (321) 953-6075
Email: office@wamalaw.com